UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN T. MITCHELL,<br>Plaintiff,<br>-AGAINST-<br>DETECTIVE TIMOTHY KRAFT AND THE CITY OF NEW YORK<br>Defendants. | AMENDED COMPLAINT AND JURY DEMAND<br>Docket: 25-cv-10065 |

Stephen T. Mitchell, as and for his complaint against the named defendants above, alleges as follows:

## INTRODUCTION

1. On September 27, 2022 Plaintiff, Stephen T. Mitchell, was arrested in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because of the misconduct and mendacity of the defendants.

2. Plaintiff, Stephen T. Mitchell, brings federal claims pursuant to 42 U.S.C. §1983 for malicious prosecution and fabrication of evidence in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and claims of violations of New York state law.

## NATURE OF THIS ACTION

3. This is an action to recover compensatory and punitive damages and an award of costs and attorneys' fees for violations of Stephen T. Mitchell's rights secured by 42 U.S.C. §§1983 and 1988 and by the United States Constitution including the Fourth, Fifth, Sixth, and Fourteenth Amendments because of the

Defendants misconduct and manufacture of known false evidence to prosecute the Plaintiff.

## THE PARTIES

4. The Plaintiff is Stephen T. Mitchell, a person of African-American descent.

5. The Defendant, Timothy Kraft, is (or was) a New York City police detective assigned to investigate and arrest Stephen T. Mitchell on or about September 25, September 26, and September 27, 2022. The Defendant Timothy Kraft's status as a police detective as of the date of this amended complaint presently is unknown to the Plaintiff.

6. Plaintiff alleges, on information and belief, that Detective Timothy Kraft interviewed Plaintiff's uncle, Sidney Browne, between September 19, 2022 and December 5, 2022.

7. On or about September 26, 2022 Detective Timothy Kraft visited the home of the Plaintiff during evening hours with another detective or police officer. The Defendant Detective Timothy Kraft instructed Plaintiff to report to his police precinct (Plaintiff believes it was the 20th Precinct in New York City) the next morning, on September 27, 2022, in order to be arrested based upon the complaint of Sidney Browne.

8. Mr. Mitchell heeded Detective Timothy Kraft's direction and reported to the precinct nearly an hour before Plaintiff was instructed to appear on September 27, 2022. Upon his appearance Plaintiff was arrested, jailed, and eventually delivered to 100 Centre Street in Manhattan for arraignment by Detective Kraft in a patrol car.

9. The municipal Defendant is the City of New York.

10. Defendant City of New York is and was at all relevant times a municipal corporation existing under and by virtue of the laws of the City and the State of New York, and having the powers and duties imposed by law thereon.

## JURISDICTION AND VENUE

11. This action is brought under 42 U.S.C. §1983 in that Stephen T. Mitchell alleges that he was deprived under color of law of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because of malicious prosecution and the fabrication of evidence prior to and during criminal court proceedings.

12. This Court has original subject matter jurisdiction over Plaintiff's federal law claims under 28 U.S.C. §§1331 and 1343, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

13. Plaintiff also alleges pendant state law claims.

14. Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. §1391 because Mr. Mitchell's claims arose in this district.

## JURY DEMAND

15. Stephen T. Mitchell hereby demands a trial by jury for all issues raised by this complaint.

## FACTUAL BACKGROUND OF THE CASE

16. Sidney Browne was the uncle of Plaintiff, Stephen T. Mitchell. Sidney Browne was born in May 1936. He was 86 years old in September 2022.

17. Sidney Browne suffered from dementia in September 2022. He had suffered from dementia for several years prior to September 2022. Some of his

dementia was due to a stroke he had a few years prior to 2022. He experienced severe memory lapses because of his mental illnesses and often hallucinated. Several times during 2022 and in the years prior he would lose items of value to him and falsely accuse people of stealing from him.

18. Indications of Sidney Browne's poor physical and mental health, as well as the results of the stroke he experienced, were apparent to a casual observer in September 2022. His speech often slurred or was slow and interrupted. His memory often failed after extended conversation; he would forget after time what he was in a discussion about. Mr. Browne had little use of his left arm; it often spasmed uncontrollably. Mr. Browne also resided in a Single Room Occupancy facility that served elderly and disabled persons and was under the care of health aids five to seven days per week.

19. Several times prior to September 2022 Sidney Browne made false complaints to security officials in his building that health aids and family members had stolen valuables and money from him. Often the items he accused people of stealing were in closets or storage areas in his home that were not in his direct line of sight. He also made false claims people tried physically to harm him when in fact they did not.

20. On or about September 17, 2022 the Plaintiff deposited more than one thousand dollars in certified funds to a bank account owned by Sidney Browne. The check was deposited in an electronic teller near Broadway in Manhattan. The money was owned by Sidney Browne and was removed and re-deposited by the Plaintiff upon Sidney Browne's request.

21. Plaintiff frequently executed banking transactions for Sidney Browne at Mr. Browne's request between 2019 and 2022. Mr. Browne was disabled and not capable of walking easily to the bank to get cash or engage in basic banking

transactions. The Plaintiff, his nephew, did this for him on several occasions for a three-year period of time.

22. Sidney Browne accused his nephew of stealing the money the nephew deposited to his account on or about September 17 or September 18, 2022. Mr. Browne checked his bank account by telephone on either of those days and the deposit made by the Plaintiff on or about September 17 or 18, 2022 did not register. The deposit registered by either September 23 or 24, 2022.

23. Upon information and belief, Sidney Browne called the police and accused his nephew of stealing from him when in fact the nephew made the deposit in a timely manner. The bank recording of the deposit did not occur until a few days after the deposit was made because the deposit was made in an electronic teller machine.

24. Detective Kraft arrested the Plaintiff on September 27, 2022 purportedly because Plaintiff threatened Mr. Browne over the telephone on September 19, 2022; approximately eight days before he arrested the Plaintiff. Mr. Browne resided approximately two miles from the Plaintiff at the time of the alleged threat.

25. The alleged threat never occurred. Plaintiff never threatened his uncle on the telephone, or anywhere else, at any time. Detective Kraft's claim was false and the detective knew the claim was false when he told the prosecutors of it.

26. The alleged threat was made on or about September 19, 2022 and reported to the detective at that time. The detective unreasonably and imprudently waited seven days before investigating the Plaintiff and eight days before arresting the Plaintiff for an alleged serious physical threat.

27. Plaintiff alleges the false threat allegation was used in order to arrest Plaintiff on September 27, 2022 as a part of a failed investigation. The Aggravated Harassment charge was made so that the Plaintiff would be incarcerated while the detective investigated whether or not Plaintiff stole money from Mr. Browne. The bank records regarding weekend transactions were unavailable during the initial stages of the detective's investigation. Once those records became available it was clear the Plaintiff made the deposit of his uncle's funds as he had promised and there was no theft.

28. The detective lacked probable cause to arrest plaintiff without the false charge and he knew it. Further, the detective's decision to arrest the Plaintiff was imprudent and unreasonable because of delay and Mr. Browne's obvious mental infirmities.

29. If the detective had performed a rudimentary investigation by talking with the building security he would have discovered there were other numerous and false reports by Mr. Browne of people stealing from him or harming him when, in fact, nothing was stolen and he never was harmed. The detective also would have learned of Mr. Browne's dementia and the unreliability of any claims he made that property was stolen from him or that he was threatened before the Plaintiff was incarcerated.

30. Detective Kraft caused the arrest and incarceration of the Plaintiff on September 27, 2022. Detective Kraft, with malice, caused a criminal complaint to be lodged against the Plaintiff in order to facilitate his investigation of the alleged theft and to enhance his income by collecting overtime for the arrest of the Plaintiff.

31. Detective Kraft bitterly complained to Plaintiff during the arrest process that because of the Covid epidemic his overtime pay opportunities diminished and he was under financial duress because without the overtime pay it was difficult

to keep up his mortgage payments and other bills he was responsible for. A significant reason for incarcerating the Plaintiff on September 27, 2027 was so the detective could make a claim for overtime pay.

32. Plaintiff was incarcerated for most of the day on September 27, 2022. He was arrested by 9 a.m. in the morning and released near 9 p.m. that evening. Plaintiff saw Detective Kraft after his arraignment to retrieve property.

33. Plaintiff had to return to court twice during a three-month period of time while criminal charges were pending. Finally, on December 5, 2022 criminal charges against the Plaintiff were dismissed for failure to prosecute.

COUNT I

VIOLATION OF 42 U.S.C. §1983 AND THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

34. Plaintiff alleges a malicious prosecution claim in violation of 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution.

35. Plaintiff alleges the Detective Kraft initiated criminal proceedings against him by effecting his arrest and beginning his prosecution on September 27, 2022.

36. The aforesaid prosecution terminated favorably for Plaintiff on December 5, 2022 by the State's voluntary dismissal of the criminal proceedings.

37. There was no probable cause for the criminal proceedings. There was no theft and no threat. Further, there was no credible evidence of Aggravated Harassment given the mental infirmities of the alleged witness. Plaintiff never threatened his uncle. The charge was used to arrest and incarcerate Plaintiff to assist in the investigation of an alleged, non-existent, theft and enhance overtime pay for Defendant Kraft.

38. The arrest and incarceration by the Detective Kraft was malicious. There was no reason or basis to arrest and incarcerate the Plaintiff. Further, the arrest and incarceration was accomplished so Detective Kraft could obtain overtime pay to help satisfy his debt obligations and living expenses.

39. Plaintiff was required to return to court several times over a three-month period of time prior to the dismissal of his case.

## COUNT II

## VIOLATION OF 42 U.S.C. §1983 AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

40. Plaintiff alleges Detective Kraft in this case was an investigating official who fabricated information, to wit: the detective falsely claimed Mr. Browne asserted a claim of aggravated harassment in order to initiate criminal proceedings against Plaintiff for the reasons noted above. The false information was forwarded to the prosecutor.

41. Plaintiff was denied his liberty. He was arrested and incarcerated. Once Plaintiff was released from incarceration, he was required to come to court on several occasions for a three-month period of time until the dismissal of the case.

## COUNT III

## THE MONELL CLAIM AGAINST NEW YORK CITY

42. Both Defendants encouraged and facilitated the known use of false material testimony by a witness for the prosecution and deliberately withheld exculpatory evidence in order to procure the arrest, indictment, prosecution,

and wrongful conviction of the Plaintiff during his prosecution in New York County.

43. This lawsuit also seeks to hold defendant City of New York liable for the New York City Police Department (NYPD) and their agents, employees, and officials misconduct pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). The NYPD and their agents, employees, and officials maintained unlawful policies, practices, and customs during Stephen T. Mitchell's investigation, arrest, pre-trial proceedings. In executing these unlawful policies, practices, and customs the NYPD and its agents, employees, and officials violated the constitutional rights of criminal suspects and defendants, including Stephen T. Mitchell.

44. In the Plaintiff's case, the unlawful policies, practices, and customs enabled detectives such as Detective Kraft, as well as other members, servants, employees, and agents of the NYPD, to violate the Plaintiff's federal constitutional rights. The policy-making officials acting on behalf of the City of New York were deliberately indifferent to racially discriminatory and unlawful policies, practices, and customs.

45. Further, they were indifferent and wantonly negligent in selection, training, supervision, and disciplining of detectives and police officers and methods and instruction of police officers and detectives with respect to preventing the fabrication of evidence and the use of false affirmations and testimony to support a prosecution. As a result, the City of New York is liable for Stephen T. Mitchell's injuries.

46. At all times relevant to this action, Defendant City of New York, by its agents, servants, and employees was responsible for the operation, maintenance, and

control of the NYPD, and the selection, training, supervision, and disciplining of detectives and police officers.

47. Plaintiff asserts a Monell claim against the City of New York. This claim is derived from the United States Supreme Court decision in Monell v. Dept. of Social Services, 436 U.S. 658 (1977).

48. A plaintiff may allege municipal liability for federal constitutional violations that occurred pursuant to a "governmental custom, policy, or usage of the municipality."[1]

49. A Monell claim requires Plaintiff to establish three elements: (1) an official policy or custom that; (2) causes Plaintiff to be subjugated to; (3) the denial of a constitutional right.[2]

50. A municipality's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.

51. Thus, where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under 42 U.S.C. §1983.[3]

52. A claim of deliberate indifference also may be framed as a claim regarding the municipal defendant's failure to train, supervise, and discipline its NYPD employees. Plaintiff alleges the NYPD's training and discipline policies and practices were consciously designed to permit and encourage violations of the

---

[1] Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012).
[2] See O'Hara v. City of New York, 2019 U.S. Dist. LEXIS 91551 *25-27 (E.D.N.Y. 2019).
[3] Collins v. City of New York, 923 F. Supp.2d 462, 476 (E.D.N.Y. 2013).

federal constitution and the holdings of the United States Supreme Court cases of Brady and Napue.[4]

53. To assert municipal liability based on a failure to train, "the plaintiff must show: [1] that a policymaker knows "to a moral certainty" that their employees will confront a given situation; [2] that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and [3] that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."[5]

54. Multiple federal district courts within the past few years have ruled that the City of New York may be held liable pursuant to Monell for customs and practices that include the knowing prosecutorial use of perjured testimony, false affirmations, and the withholding of exculpatory evidence favorable to the accused in prosecutions as similarly alleged in this case.[6]

55. Defendant City of New York acts through policymaking officials for the NYPD. At the time of Stephen T. Mitchell's arrest, policymaking officials for the NYPD engaged in the following misconduct, which was reflected, and led to the malicious prosecution and use of fabricated evidence against the Plaintiff: (1) acted with deliberate indifference to the constitutional rights of individuals suspected of or charged with criminal activity; (2) implemented or tolerated plainly inadequate policies, procedures, regulations, practices, customs,

[4] Brady v. Maryland, 373 U.S. 83, 87 (1963); Napue v. Illinois, 360 U.S. 264, 269-272 (1959).
[5] Davis v. City of New York, 2017 U.S. Dist. LEXIS 143678 **12, 13, 24-28 (E.D.N.Y. 2017).
[6] O'Hara v. City of New York, 2019 U.S. Dist. LEXIS 91551 **25 -27 (E.D.N.Y. 2019); Collins v. City of New York, 923 F. Supp.2d 462, 476-478 (E.D.N.Y. 2013); Davis v. City of New York, 2017 U.S. Dist. LEXIS 143678 **22-28 (E.D.N.Y. 2017); Bailey v. City of New York, 79 F. Supp.3d 424, 441-443 (E.D.N.Y. 2015); Walker v. City of New York, 974 F.2d 293, 300 (2nd Cir. 1992); Fraser v. City of. New York, 2021 U.S. Dist. LEXIS 69324 at **26-29 (S.D.N.Y., April 9, 2021)(Monell liability sustained regarding New York County prosecutors for a Brady violation); Newson v. City of New York, 2019 U.S. Dist. LEXIS 143835 (E.D.N.Y. August 22, 2019).

training, supervision, and discipline concerning the constitutional duties of NYPD investigators not to fabricate evidence and to accurately report the nature of their investigations to the court, prosecutors, and the defense when appropriate; (3) for the NYPD to properly document and disclose *Brady* information; (4) and for the NYPD not to commit misconduct such as by giving false and misleading affirmations in support of affidavits, motions, arguments to the court in the course of a prosecution.

56. Mr. Mitchell's case was not a random miscarriage of justice in an otherwise functioning law enforcement regime. A report from an independent body demonstrates that Defendant City of New York, during the relevant time period of Stephen T. Mitchell's prosecution and appeals, was plagued by institutional deficiencies that allowed a wanton and reckless culture to develop within the NYPD. This culture allowed employees of the NYPD to violate constitutional rights of the citizens of the City of New York without disciplinary risk or repercussions.

57. The policies, customs, and practices of the NYPD discussed above, as engaged by Detective Kraft, infected the People's case against the Plaintiff.

58. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-57 as though fully set forth herein.

59. Detective Kraft's misconduct as discussed above with respect to fraudulently creating charges to cause the arrest of the Plaintiff was part of a malevolent policy, practice, and custom perpetrated against Black men.

60. The aforesaid malevolent and racially discriminatory policy, practice, and custom is the result the deliberate indifference of the Defendant City of New York, the NYPD, and other law enforcement officials.

61. The aforesaid malevolent and racially discriminatory policy, practice, and custom also was the result of the municipal defendant's failure to train, supervise, and discipline its NYPD employees, including Detective Kraft, with respect to the use of false affirmations and the misconduct associated with fraudulent prosecutions for their own personal benefit.

62. As a result of the unlawful policies, practices, and customs, Stephen T. Mitchell's constitutional rights were violated and he suffered damages.

63. As a result of the municipal defendant's failure to train, supervise, and discipline its NYPD employees, including Detective Kraft, with respect to the use of false affirmations and the misconduct associated with fraudulent prosecutions for their own personal benefit, Stephen T. Mitchell's constitutional rights were violated and he suffered damages.

64. Therefore, the City of New York is liable for the NYPD's unlawful policies, practices, and customs which the City municipal defendants acted pursuant to, which resulted in the violation of Stephen T. Mitchell's constitutional rights.

65. For all the aforesaid reasons the City of New York has violated the federal constitutional rights of the Plaintiff pursuant to 42 U.S.C. §1983 and Monell.

## PRAYER FOR RELIEF PURSUANT TO 42 U.S.C. §1983

WHEREFORE, Plaintiff STEPHEN T. MITCHELL demands judgment against the above-captioned Defendants as follows:

1. For compensatory damages to be determined at trial;

2. For punitive damages against the individual Defendant in an amount to be determined at trial;
3. For reasonable attorneys' fees, costs, and disbursements, under 42 U.S.C. §§ 1983 and 1988 and other applicable laws;
4. For pre-and post-judgment interest as allowed by law; and
5. For such other relief as this Court deems just and proper.

VERIFICATION

I affirm under the penalties of perjury pursuant to 28 U.S.C. §1746 that the aforesaid statements are true and correct to the best of my ability.

Dated: December 5, 2025

Stephen T. Mitchell

By:________________________

Stephen T. Mitchell, *Pro Se*
461 Central Park West Apt. 6B
New York, NY 10025
STM7615@aol.com